UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREEPLAY MUSIC, LLC,<br><br>                         Plaintiff,<br><br>        v.<br><br>ZEE ENTERTAINMENT ENTERPRISES<br>LIMITED, et al.,<br><br>                         Defendants. | Civil Action No. 1:18-cv-04346-VEC<br><br>(Judge Valerie E. Caproni)<br><br>(Magistrate Judge Gabriel W. Gorenstein) |

---

# DEFENDANT ZEE ENTERTAINMENT ENTERPRISES LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(5) AND 12(B)(2)

---

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

    A.   The Complaint Must Be Dismissed Because Freeplay Failed To
    Properly Serve ZEEL Pursuant To The Hague Convention As
    Applied To Indian Companies. .................................................................... 2

        1.   Standard For Dismissal Pursuant To Rule 12(b)(5) ................................... 3

        2.   Freeplay's Purported Service Of Process On ZEEL Via
        Certified Mail Was Impermissible And Ineffective. ................................. 3

        3.   ZEEL Was Not Properly Served With The Complaint. ............................ 5

    B.   This Court Should Dismiss The Complaint As To ZEEL Because It
    Lacks Personal Jurisdiction Over ZEEL. ..................................................... 7

        1.   Factual Background .................................................................................. 7

            i.    ZEEL Has Insufficient Contacts With New York For
            This Court To Exercise Personal Jurisdiction Over
            It. ......................................................................................... 7

            ii.   ZEEL Is A Separate Corporate Entity From ATUL-
            DE, ATUL-WY, And Eevee With Which It Is Only
            Loosely Affiliated. ............................................................... 8

        2.   The Plaintiff Must Establish That Personal Jurisdiction
        Exists Under The Law Of The Forum State Consistent With
        The Due Process Clause............................................................................ 9

        3.   The Court Lacks General Jurisdiction Over ZEEL Pursuant
        To New York Law. ................................................................................. 10

        4.   New York Also Lacks Specific Jurisdiction Over ZEEL
        Pursuant To The Long-Arm Statute, CPLR § 302(a)............................... 11

            i.    ZEEL Lacks Business Activity In New York That
            Relates To Freeplay's Claims As CPLR § 302(a)(1)
            Requires. ............................................................................. 12

            ii.   Because ZEEL Did Not Commit Tortious Acts
            When Physically Present In New York, CPLR
            § 302(a)(2) Does Not Apply........................................................ 17

iii.    ZEEL Did Not Cause Any "Direct Injury" In New York Sufficient To Be Hauled Into New York Under CPLR § 302(a)(3). ......................................................................... 18

5.    The Exercise Of Personal Jurisdiction Would Not Comport With Due Process Because ZEEL Does Not Have Sufficient Minimum Contacts With New York. ........................................ 20

III.    CONCLUSION ............................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Aerofoil Techs., AG v. Todaro*,
No. 11 Civ. 9505(ALC)(DCF), 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012)...........................6

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
480 U.S. 102 (1987)............................................................................................................22

*Bensusan Restaurant Corp. v. King*,
126 F.3d 25 (2d Cir. 1997)............................................................................................17, 18

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)................................................................................................16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).......................................................................................................21, 22

*Cephalon, Inc. v. Sun Pharm. Indus., Inc.*,
No 11-5474, 2011 WL 6130416 (D. N.J. Dec. 7, 2011)..........................................................4

*Commer v. McEntee*,
283 F. Supp. 2d 993 (S.D.N.Y. 2003)...................................................................................3

*Darden v. DaimlerChrysler N. Am. Holding Corp.*,
191 F. Supp. 2d 382 (S.D.N.Y. 2002)...................................................................................4

*DiStefano v. Carozzi N. Am. Inc.*,
286 F.3d 81 (2d Cir. 2001)....................................................................................................9

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*,
12 CIV. 6390 (JPO), 2013 WL 1775440 (S.D.N.Y. Apr. 25, 2013) ......................................23

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
No. 04 Civ. 5238GEL, 2005 WL 1500896 (S.D.N.Y. June 23, 2005)....................1, 11, 15, 16

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
No. 16 Civ. 442 (NRB), 2017 WL 449913 (S.D.N.Y. Jan. 18, 2017)....................1, 12, 19, 20

*Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*,
No. 16-CIV-5883 (JGK) (RWL), 2018 WL 3639929 (S.D.N.Y. July 10, 2018) ...................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...............................................................................................................9

*Gordian Grp., LLC v. Syringa Expl., Inc.*,
   168 F. Supp. 3d 575 (S.D.N.Y. 2016)....................................................................13

*Heredia v. Transport S.A.S., Inc.*,
   101 F. Supp. 2d 158 (S.D.N.Y. 2000).................................................................4, 5

*Howard v. Klynveld Peat Marwick Goerdeler*,
   977 F.Supp. 654 (S.D.N.Y. 1997)...........................................................................3

*Int'l Shoe Co., v. Washington*,
   326 U.S. 310, 66 S.Ct. 154 (1945).........................................................................21

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998)..............................................................................8, 10

*Jonas v. Estate of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015)...................................................................12

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
   918 F.2d 1039 (2d Cir. 1990)................................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank*,
   732 F.3d 161 (2d Cir. 2013)..................................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)..................................................................3, 10, 12, 21

*Makarova v. United States*,
   201 F.3d 110 (2d. Cir. 2000)..................................................................................9

*Mantello v. Hall*,
   947 F. Supp. 92 (S.D.N.Y. 1996)................................................................ *passim*

*Ramsaran v. Abraham*,
   No. 15-CV-10182 (JPO), 2017 WL 1194482 (S.D.N.Y. Mar. 30, 2017).....................3, 4, 6, 7

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012)...............................................................4, 6, 9

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014).............................................................................9, 10

*Starmedia Network, Inc. v. Star Media, Inc.*,
   00 Civ. 4647(DLC), 2001 WL 417118 (S.D.N.Y. Apr. 23, 2001) ..........................16

*Sunward Elec., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004)...................................................................................13

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013)............................................................................12, 19, 20

*Tuckerbrook Alternative Investments, LP v. Banerjee*,
    754 F. Supp. 2d 177 (D. Mass. 2010) ............................................................4, 5, 6

*Volkswagenwerk AG v. Schlunk*,
    486 U.S. 694 (1988)................................................................................................4

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................................21

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*,
    451 F. Supp. 2d 585 (S.D.N.Y. 2006)....................................................................3

*Wide-World Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..............................................................................................22

**State Cases**

*Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*,
    29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972)..............................10

**State Statutes**

New York Business Corporation Law § 307 ........................................................ *passim*

**Rules**

CPLR § 301................................................................................................10, 11

CPLR § 302......................................................................................................17

CPLR § 302(a) ...........................................................................................11, 12

CPLR § 302(a)(1) ...................................................................................... *passim*

CPLR § 302(a)(2) ...............................................................................12, 17, 18

CPLR § 302(a)(3) .......................................................................12, 18, 19, 20

CPLR § 302(a)(3)(ii).........................................................................................19

Federal Rules of Civil Procedure 4(f)...................................................................6

Federal Rules of Civil Procedure 4(f)(4)..............................................................6

Federal Rules of Civil Procedure 4(h)(1)..........................................................2, 6

Federal Rules of Civil Procedure 4(h)(2)...................................................................................6

Federal Rules of Civil Procedure 4(k)(2).................................................................................21

Federal Rules of Civil Procedure 12(b)(2)...........................................................................1, 2, 9

Federal Rules of Civil Procedure 12(b)(5)...........................................................................1, 3, 7

Federal Rules of Civil Procedure 12(b)(6)...............................................................................1

Federal Rules of Civil Procedure 12(b)(7)...............................................................................1

## I.       INTRODUCTION

The Complaint as to Defendant Zee Entertainment Enterprises Limited ("ZEEL") should be dismissed for two separate and independent grounds pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).  Plaintiff Freeplay Music, LLC ("Freeplay") failed to follow the fundamental and well-established procedures for service of the complaint on an Indian company without any presence in the United States.  Through its prior litigations involving foreign entities, including Indian companies, Freeplay is well aware that such companies must be served through the process set forth in the Hague Convention—a required protocol that Freeplay does not allege that it even attempted to follow.  Instead, Freeplay disregarded these clear requirements and notwithstanding its own incontrovertible knowledge of the need to serve an Indian defendant pursuant to the Hague Convention.  According to its own Affidavit of Service, Freeplay only attempted to perfect service under a New York business statute.  Freeplay's knowing and willful refusal to even attempt service under the Hague Convention requires dismissal of ZEEL pursuant to Rule 12(b)(5).

There is a second independent ground to dismiss this case as to ZEEL, as the complaint also fails to provide a sufficient basis for personal jurisdiction over ZEEL.[1]  Freeplay's aggressive assertion of copyright infringement on the thinnest jurisdictional bases is nothing new to this Court: Similar cases filed by Freeplay in this district have been dismissed for lack of personal jurisdiction.  *See, e.g.*, *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 16 Civ. 442, (NRB), 2017 WL 449913, at *7 (S.D.N.Y. Jan. 18, 2017) (hereinafter "*Arbogast*"); *Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04 Civ. 5238GEL, 2005 WL 1500896, at *8 (S.D.N.Y. June 23,

---

[1] The defects that are the subject of this motion are specific to ZEEL, and extend beyond the Complaint's inability to state a claim for copyright infringement as to each defendant. The Served Defendants in this case, Asia TV USA Ltd. (Delaware) ("ATUL-DE") and Asia TV USA Ltd. (Wyoming) ("ATUL-WY"), Eevee Multimedia, Inc. ("Eevee"), YuppTV USA Inc., DISH Network Corporation, DISH Network L.L.C., and Sling TV L.L.C. moved to dismiss the Complaint for failing to comply with Federal Rules of Civil Procedure 12(b)(6) and (7). *See* Docs. 33-35.

2005) (hereinafter "*Cox*").  True to form, Freeplay's Complaint here improperly names ZEEL—an Indian corporation without any physical presence, business registration, property, or employees in New York—as one of the defendants.  As in Freeplay's previous unsuccessful enforcement efforts in this court, New York law does not provide for personal jurisdiction over ZEEL.  Accordingly, ZEEL should also be dismissed from this case pursuant to Rule 12(b)(2).

## II.    ARGUMENT

### A.    The Complaint Must Be Dismissed Because Freeplay Failed To Properly Serve ZEEL Pursuant To The Hague Convention As Applied To Indian Companies.

Freeplay's failure to even attempt to serve ZEEL, a foreign company without any presence in the United States, pursuant to the well-established Hague Convention procedures (subject to India's Reservations) requires dismissing ZEEL from the Complaint for that reason alone.  In a deliberate effort to avoid those procedures—which this Court (and others) have repeatedly recognized are required for serving such entities—Freeplay claims instead that "service of process has been effected on [ZEEL] pursuant to New York Business Corporation Law § 307 (applicable to this action by Fed. R. Civ. P. 4(h)(1))."  (Doc. 58, ¶ 7; *see also id.* at ¶ 3.)  Freeplay is incorrect.

What is worse, Freeplay knows it, having previously attempted to serve an Indian defendant pursuant to the Hague Convention in a case filed in this very court.  In *Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*, No. 16-CIV-5883 (JGK) (RWL) (S.D.N.Y. Jun. 7, 2017), Freeplay "attempt[ed] to complete *proper* service" under the Hague Convention upon Indian defendant in a copyright infringement, and described its efforts to effect such service.  *See id.*, Dkt. No. 26 (Aff. of Peter B. Shapiro) at ¶¶ 2, 7–12 (emphasis added).  Even after such efforts to "proper[ly]" serve the entity were unsuccessful, Freeplay moved for leave of the Court to employ alternative means of serving process, and did not simply decide on its own that it was entitled to employ such means *ab initio*.  *See id.* at Dkt. Nos. 22–23 (Mot. to Serve through Alternative Means

2

and supporting Memo. of Law); *see also id.* at Dkt. No. 27 (Jun. 13, 2017 Order granting Mot. to Serve in view of supporting Aff.).  But unlike in *Nian*, Freeplay does not allege that it even attempted such proper service here, and because Freeplay's purported alternative means of attempted service falls woefully short of what is required to serve such foreign entities, the Complaint must be dismissed as to ZEEL.

### 1.    Standard For Dismissal Pursuant To Rule 12(b)(5)

ZEEL was not properly served with the Complaint, and in order for a Court to exercise jurisdiction over a defendant, "service of process on the defendant must have been procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Ramsaran v. Abraham*, No. 15-CV-10182 (JPO), 2017 WL 1194482, at *10 (S.D.N.Y. Mar. 30, 2017).  Thus, pursuant to Federal Rule of Civil Procedure 12(b)(5), such "a complaint may be dismissed for insufficient service of process." *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quoting *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y. 1997)).  Once a defendant challenges the sufficiency of service of process, as ZEEL has done, the burden of proof is on Freeplay, as the party claiming to have served process, to show that service was valid.  *See Commer v. McEntee*, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003) (citation omitted).  But it was not.

### 2.    Freeplay's Purported Service Of Process On ZEEL Via Certified Mail Was Impermissible And Ineffective.

As Freeplay is well aware from its efforts to serve Nian Infosolutions just one year earlier, its purported service of process on ZEEL via certified mail was not permitted under either American or Indian law.  Section 307, the statute on which Freeplay relied, allows a non-New York corporation not authorized to do business in the state to be served by service (a) "upon the secretary of state as its agent" *and* (b) by personal delivery or by registered mail with return receipt

3

requested.  N.Y. Bus. Corp. L. § 307(a), (b)(1),(2).  But the Supreme Court has held that "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 699 (1988).  Thus, when serving a foreign entity abroad under Section 307, based on its requirement of personal delivery or registered mail, "the Hague Convention [] applies and preempts contrary state law" *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (quoting *Schlunk*, 486 U.S. at 700) (discussing transmittal of judicial documents abroad pursuant to Section 307); *see also Heredia v. Transport S.A.S., Inc.*, 101 F. Supp. 2d 158, 161 (S.D.N.Y. 2000) (because the New York service law at issue required the transmittal of service documents abroad, "plaintiff's service must meet the requirements of the Hague Convention…").

Proper service of process upon ZEEL and other entities located in India is governed by the Hague Convention, compliance with which is "mandatory in all cases to which it applies." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 626 (S.D.N.Y. 2012) (citation omitted).  In general, such service in India requires that the serving party forward a copy of the complaint and summons to the Central Authority of India, which serves the documents according to Indian law.  *Ramsaran*, 2017 WL 1194482, at *10 (citing *Tuckerbrook Alternative Investments, LP v. Banerjee*, 754 F. Supp. 2d 177, 181-82 (D. Mass. 2010)); *accord Cephalon, Inc. v. Sun Pharm. Indus., Inc.*, No 11-5474, 2011 WL 6130416, at *2 (D. N.J. Dec. 7, 2011) (the Hague Convention requires that "service of process on entities in India … be sent to the Indian Central Authority...").  Freeplay is well aware of these requirements, as it detailed its efforts to comply with them to serve an Indian defendant in a sworn affidavit in *Nian Infosolutions*.  Moreover, India has explicitly objected to the alternative means of service provided in Article 10 of the Hague Convention, including service

by certified mail.  *See* India Declarations Reservations, Hague Conference on Private Int'l Law ("India is opposed to the methods of service provided in Article 10");[2] *Banerjee*, 754 F. Supp. 2d at 181 ("Because India opposes the methods of service proscribed in Article 10, certified mail was not a sufficient method of service.").  Again, Freeplay is aware of this requirement as well.

### 3.    ZEEL Was Not Properly Served With The Complaint.

Freeplay did not follow the service protocol as prescribed by the Hague Convention as adopted by India and therefore the Complaint must be dismissed as to ZEEL.  As discussed above, Freeplay was required to effectuate service through the Central Authority of India because India explicitly rejected alternate means of service, such as through certified mail.  But even though it knew such efforts were required, and had previously employed them in prosecuting its infringement suit against Nian Infosolutions just one year prior, Freeplay failed to even attempt to do so here.  Freeplay has identified no other mode of service on ZEEL, and its exclusive reliance on Section 307, without resort or reference to the additional requirements of the Hague Convention, fails to establish proper service.  *See Heredia*, 101 F. Supp. 2d at 161 (requiring compliance with the requirements of the Hague Convention in addition to New York procedures).

In this case, Freeplay neither served ZEEL by personal delivery in New York nor transmitted the complaint to India through the Central Authority of India, as required by Indian law under the Hague Convention.  Indeed, Freeplay's Affidavit of Service is silent regarding any efforts to comply with the Hague Convention, and Freeplay has failed to present any other evidence of such compliance.  The sum total of what Freeplay has alleged to support service is that it claims to have served ZEEL by leaving a copy of the Complaint and related documents "with an agent for the Secretary of State of the State of New York pursuant to Section 307 of the Business

---

[2] Available at http://www.hcch.net/index_en.php?act=status.comment&csid=984&disp=resdn (accessed Nov. 13, 2018).

Corporation Law," and that "notice of service and copy of the process were sent to [ZEEL] via registered mail at 18th Floor, A-Wing, Marathon Futurex, N.M. Joshi Marg, Lower Parel, Mumbai, 400013 INDIA, bearing tracking number RI I001252938US."  (Doc. 58, ¶¶ 3-4.)  These efforts fall woefully short of complying with the Hague Convention as implemented by Indian law.

Indeed, courts in this district have expressly rejected any attempts to serve Indian companies through such alternative means, such as by registered mail.  *See, e.g.*, *Ramsaran*, 2017 WL 1194482, at *10 (rejecting plaintiff's attempts to directly serve an Indian company by hand or mail in India); *see also Tuckerbrook*, 754 F. Supp. 2d at 181 (holding that certified mail was not a sufficient method of service for an Indian company).  Under these circumstances, "district courts cannot circumvent the Hague Convention at whim and authorize alternative service when the foreign state has affirmatively objected to the type of service requested." *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505(ALC)(DCF), 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012).  Therefore, Freeplay's attempted service was ineffective,[3] and Freeplay offers no other allegations supporting proper service of the complaint pursuant to other permissible methods.[4]

Because Freeplay failed to comply with the Hague Convention (subject to India's Reservations), its attempted service under Rule 4(h)(1) and Section 307 was ineffective, and the Complaint against ZEEL should therefore be dismissed for improper service pursuant to

---

[3] In addition to being ineffective due to Freeplay's failure to comply with the Hague Convention, Freeplay's attempted service under Section 307 also fails because that provision only applies to foreign corporations who "would be subject to the personal or other jurisdiction of the courts of [New York] under article three of the civil practice law and rules." As explained below, however, ZEEL is not subject to the personal jurisdiction of the courts of New York.

[4] Freeplay makes no argument that it served ZEEL under Federal Rule of Civil Procedure 4(h)(1), which governs the service of domestic or foreign corporations in the United States. Freeplay provides no evidence that it served ZEEL or anyone authorized to accept service on its behalf in any Judicial District within the United States. Likewise, Freeplay failed to meet the service requirements under Federal Rule of Civil Procedure 4(h)(2), which permits service on a foreign corporation abroad in accordance with Rule 4(f), which in turn permits service of process on a corporation abroad "by any internationally agreed upon means reasonably calculated to give notice, such as those authorized by the Hague Convention." *See Sikhs for Justice*, 893 F. Supp. 2d at 626 (quoting Fed. R. Civ. P. 4(f)(4)). But as explained above, there is not any allegation, let alone evidence, that Freeplay followed the requirements of the Hague Convention subject to India's Reservations in attempting to serve ZEEL.

Rule 12(b)(5).  *Ramsaran*, 2017 WL 1194482, at *10 (dismissing case when plaintiff failed to serve Indian company under the Hague Convention procedures subject to India's Reservations).

**B.     This Court Should Dismiss The Complaint As To ZEEL Because It Lacks Personal Jurisdiction Over ZEEL.**

    **1.     Factual Background**

        **i.     ZEEL Has Insufficient Contacts With New York For This Court To Exercise Personal Jurisdiction Over It.**

As with its Complaint as a whole, Freeplay uses improper "group pleading" to allege that the Court has personal jurisdiction over "Defendants" or "the Zee Defendants" as a group, rather than pleading specific facts as to ZEEL itself.  (*See* Doc. 1, ¶¶ 16-22.)  For example, the Complaint implies that there is personal jurisdiction over ZEEL because "the Zee Defendants have all maintained physical offices and employees in New York City."  (*Id.* at ¶ 22.)  But ZEEL has no connection to any office in New York.  No office in New York is leased and operated by ZEEL.  (*See* Declaration of Sucheta Burman ("Decl."), attached hereto as Exhibit A, at ¶ 13.)[5] ZEEL does not pay the rent or maintain the office.  (*Id.*)  No ZEEL employees work in this office; the individuals who work in this office are not employed or paid by ZEEL. (*Id.*)  In fact, ZEEL has no control over the activities of the office.  (*Id.*)

In reality, there are no contacts between ZEEL and New York sufficient to confer personal jurisdiction over ZEEL.  Besides not maintaining any offices, real property, or employees in New York, ZEEL is not registered to do business there.  (*Id.* at ¶ 12.)  It does not transact any business in the state.  (*Id.*)  ZEEL does not have a physical office in New York. (*Id.* at ¶ 14.)  And it does not have any bank accounts in New York.  (*Id.* at ¶ 15.)[6]

---

[5] While ZEEL's website, https://www.zeeentertainment.com, lists an office in New York, it is not actually an office of ZEEL.  (*Id.* at ¶ 14.)  ZEEL does not operate, have any employees, or conduct business from that office.  (*Id.*)

[6] Freeplay's personal jurisdiction allegations in the Complaint relate wholly to Defendants' alleged contacts with New York.  But when expanding the analysis to the United States as a whole, the result is the same.  ZEEL has no different contacts with the United States than it does with New York. (Decl. at ¶ 16.)

> **ii.     ZEEL Is A Separate Corporate Entity From ATUL-DE, ATUL-WY, And Eevee With Which It Is Only Loosely Affiliated.[7]**

In its Complaint, Freeplay argues that the contacts of ATUL and Eevee with New York are sufficient to confer jurisdiction over ZEEL, alleging that "[t]he ZEE US Subsidiaries are effectively departments of ZEE, sometimes operating out of the same corporate suite, and ZEE's control is pervasive enough that corporate separation is more formal than real."  (Doc 1 at ¶ 22.) Freeplay is not correct.  Nor are Freeplay's legal conclusions sufficient to establish jurisdiction on the pleadings.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998).

ZEEL is not a direct parent of ATUL or Eevee, and ATUL, Eevee, and ZEEL are separate corporate entities with their own corporate structures.  (Decl. at ¶ 4.)  ATUL and ZEEL have their own separate offices, payrolls, and bank accounts.  (*Id.* at ¶ 5.)  ZEEL does not pay any employees of ATUL. (*Id.*)  Nor does ZEEL control or even have approval over ATUL's business operations, including which entities ATUL sell advertising to or the entities with which ATUL contracts with to provide it with services, or to distribute its products and services.  (*Id.*)

Freeplay also incorrectly asserts that "ZEE exercises complete domination over the Zee US Subsidiaries with respect to their distribution of the Infringing Programs."  (Doc. 1 at ¶ 34.) This unsupported attorney argument does not establish anything remotely plausible on the pleadings.  *See Jazini*, 148 F.3d at 184.  Underscoring its facial implausibility, Freeplay confuses the "ZEE" brand with the entity ZEEL, but again, the two are entirely separate:  ZEEL does not advertise with the "ZEE" brand in the United States, and U.S. trademarks associated with this brand are not owned by ZEEL.  (Decl. at ¶¶ 6-7.)  Customers in the United States cannot subscribe to the service provided by ZEEL to which customers in India subscribe.  (*Id.* at ¶ 8.)  Indeed, ZEEL

---

[7] ATUL-DE and ATUL-WY are separate entities, but the distinctions between them are not material for purposes of this brief, and therefore, ATUL-WY and ATUL-DE are referred to collectively as "ATUL."

lacks rights to distribute such content to the United States market.  (*Id.* at ¶ 9.)  Nor does ZEEL have rights to distribute programming and content to ATUL's customers in the United States.  (*Id.* at ¶ 8.)  Further, the decisions of what programming ATUL distributes in the United States are not made by ZEEL.  (*Id.* at ¶ 10.)  Nor does ATUL seek or obtain permission from ZEEL as to what content ATUL can produce and distribute.  (*Id.*)  In fact, ZEEL has no decision making on the programming or advertising ATUL provides to customers in the United States.  (*Id.*)  Nor does ZEEL control or curate ATUL's United States website, www.ZEETVUSA.com.  (*Id.*)

### 2.     The Plaintiff Must Establish That Personal Jurisdiction Exists Under The Law Of The Forum State Consistent With The Due Process Clause.

Rule 12(b)(2) requires that a court dismiss a defendant over which the court lacks personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Thus, in responding to a motion to dismiss under Rule 12(b)(2), the plaintiff must establish that the court has jurisdiction over a defendant.  *See, e.g.*, *DiStefano v. Carozzi N. Am. Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Sikhs for Justice*, 893 F. Supp. 2d at 616.  Further, a court may rely on evidence outside of the pleadings, including declarations submitted in support of the motion and the records attached to these declarations.  *See Sikhs for Justice* at 616 ("In resolving a motion to dismiss . . . a district court . . . may refer to evidence outside the pleadings.") (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000)).

A court's jurisdiction over a party may be either specific or general.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  Specific jurisdiction depends on the connection between the forum and the underlying controversy.  *Id.*  "By contrast, general jurisdiction exists only when a corporation's contacts with a state are 'so "continuous and systemic" as to render [it] at home in the forum State.'"  *Id.*  (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  But New York lacks either sort of jurisdiction over ZEEL.

New York courts must undertake a "two-step inquiry" to determine whether personal jurisdiction exists over a defendant:

> First, we determine whether the defendant is subject to jurisdiction under the law of the forum state - here, New York.  Second, we consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution.

*Sonera Holding*, 750 F.3d at 224.  The New York long-arm statute is more restrictive than the constitutional limits on personal jurisdiction.  *See Licci ex. rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci I*"), 673 F.3d 50, 60-61 (2d. Cir. 2012).  Therefore, when the plaintiff premises its theory of personal jurisdiction on the New York long-arm statute, as Freeplay does here, the Court need not even consider the constitutional limitations on the exercise of jurisdiction if it determines that the requirements of the statute have not been met.  *See id.* at 61.  And they have not.

### 3.   The Court Lacks General Jurisdiction Over ZEEL Pursuant To New York Law.

ZEEL does not do business in New York, let alone a sufficient amount to establish general jurisdiction over ZEEL.   Under CPLR § 301, a New York court may only exercise general jurisdiction over a defendant "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its presence in the state." *Jazini*, 148 F.3d at 184 (quoting *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 430-31, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972) (applying N.Y. C.P.L.R. § 301)).   This requires that the defendant "does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Mantello v. Hall*, 947 F. Supp. 92, 97 (S.D.N.Y. 1996) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)). Indeed, "[t]he quintessential case for general jurisdiction over a foreign corporation in a particular state exists where the corporation is incorporated or has its principal place of business." *Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*, No. 16-CIV-5883 (JGK) (RWL), 2018 WL

3639929, at *5 (S.D.N.Y. July 10, 2018), *report and recommendation adopted,* 2018 WL 3632524 (S.D.N.Y. July 31, 2018).  Beyond those circumstances, general jurisdiction will be found only in "an exceptional case." *Id.* (citation omitted).

In analyzing whether a foreign corporation is doing business in New York for the purposes of CPLR § 301, courts rely on the following "traditional indicia":

> (1) the existence of an office in New York;
> (2) the solicitation of business in New York;
> (3) the existence of bank accounts or other property in New York; and
> (4) presence of employees of the foreign defendant in New York.

*Cox*, *supra*, at *3 (quoting *Mantello*, 947 F. Supp. at 97).  None of these "traditional indicia" support the assertion of general personal jurisdiction over ZEEL in this case, and the complaint fails to address them as to ZEEL specifically.

Here, Freeplay generally alleges that the Court has personal jurisdiction over Defendants under CPLR § 301 because "Defendants, acting alone and in concert, do systematic and continuous business in this judicial district, including maintaining offices and employees, continuous solicitation of business in New York, including from New York consumers, and other persistent contacts." (Doc. 1 at ¶ 21.)  But ZEEL in incorporated in India, has its principal place of business in India, and does not maintain an office in New York.  (Decl. at ¶¶ 3, 13.)  Furthermore, ZEEL does not solicit business in New York, nor does it maintain bank accounts, own property in New York, or have employees in New York.  (*Id.* at ¶¶ 12-15.)  Plainly, ZEEL is not "at home" in New York, and therefore this Court lacks general personal jurisdiction over ZEEL under CPLR § 301.

### 4.    New York Also Lacks Specific Jurisdiction Over ZEEL Pursuant To The Long-Arm Statute, CPLR § 302(a).

Likewise, ZEEL's contacts with New York are insufficient for the Court to exercise specific jurisdiction over ZEEL under the New York long-arm statute.  Plaintiff baldy asserts that:

> This  Court  has  personal  jurisdiction  over  Defendants  pursuant  to  [CPLR]

§302(a)(1), (2) and/or (3). Defendants, acting alone and in concert, have committed acts of copyright infringement within New York, including the performance and distribution of infringing content directly to subscribers and viewers in New York. Defendants, acting alone and in concert, have transacted business in New York, including by contracting to supply infringing goods and services in New York, that is intimately tied to the copyright infringement claims in this action.

(Doc. 1 at ¶ 16.)  But this improper "group pleading" does not suffice; New York's long-arm statute, CPLR § 302(a) only authorizes the exercise of specific jurisdiction over a defendant when the cause of action arises out of certain acts of each defendant specified by the statute.  *See Licci I*, 673 F.3d at 60.

Freeplay's reliance on these three subparts of Section 302(a) fails to establish any specific personal jurisdiction over ZEEL in this case.  First, ZEEL does not transact business within the state or contract to supply goods or services in the state, as required by Section 302(a)(1).  Second, ZEEL has not committed a tortious act when present in the state, as required by Section 302(a)(2).  Third, under the controlling precedent of *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013), and *Arbogast*, *supra*, ZEEL has not caused any "direct injury" within New York, as required for specific personal jurisdiction by Section 302(a)(3).

i.      **ZEEL Lacks Business Activity In New York That Relates To Freeplay's Claims As CPLR § 302(a)(1) Requires.**

ZEEL does not have any business activity in New York, let alone business activity that relates to Freeplay's copyright infringement claims.   New York's long-arm statute, CPLR § 302(a)(1), permits a court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services within the state," but the defendant's acts relied upon to establish jurisdiction under this section must relate to the claims asserted.  *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323–24 (S.D.N.Y. 2015).  A non-domiciliary must "purposefully avail[ ] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections

of its laws" to be considered as having transacted business for purposes of CPLR § 302(a)(1). *Mantello*, 947 F. Supp. at 99 (citation omitted).  ZEEL has not availed itself of any such privilege, and thus has transacted no business in New York.

A four-factor test is used to assess whether personal jurisdiction under CPLR § 302(a)(1) may be asserted over a non-domiciliary defendant based on its business transactions or contracts:

> "(i) whether the defendant has an on-going contractual relationship with a New York corporation;
>
> (ii) whether the contract was negotiated or executed in New York, and whether, after effectuating a contract with a New York business, the defendant has visited New York for the purpose of meeting with the parties to the contract regarding the relationship;
>
> (iii) what the choice-of-law clause is in any such contract; and;
>
> (iv) whether the contract requires . . . send[ing] notices and payments into [New York] or subjects them to supervision by [a] corporation in [New York]."

*Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 584 (S.D.N.Y. 2016) (quoting *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004)).  While each factor is relevant, none is dispositive, and the ultimate decision must be based on the totality of the circumstances. *Gordian Grp.* at 584 (quoting *Sunward* at 22–23).

a)    **ZEEL Has Not Transacted Business In New York Giving Rise To Freeplay's Infringement Claim.**

Applying these factors to the facts *sub judice* compels the conclusion that § 302(a)(1) cannot support the assertion of specific personal jurisdiction over ZEEL, which does not transact any business in New York, and has no contractual relationships with Plaintiff or any New York companies or consumers.  (Decl. at ¶ 12.)  And tellingly, Freeplay's Complaint is fatally devoid of any allegations identifying such purposeful acts by ZEEL in New York.  Rather, the crux of the Complaint's allegations are that the Defendants illegally copied Plaintiff's works and synchronized them for use online directly to consumers in New York and the United States.  (Doc. 1 ¶ 31.)  But

13

this does not suffice to establish that ZEEL has "transacted business" pursuant to § 302(a)(1).

Read at its most generous, all that the Complaint offers to support *factor one* are conclusory allegations that "ZEE US Subsidiaries[8] and conspirators in New York acted at the request and direction, on behalf and under the control of ZEE, and with ZEE's knowledge of their activities distributing the Infringing Programs." (Doc. 1 at ¶ 38.) Freeplay's labels do not substitute for analysis; they are clearly aimed at reaching legal conclusions. They are also incorrect. (*See* Decl. at ¶¶ 4-11.) The so-called "ZEE US Subsidiaries" are neither New York corporations nor direct subsidiaries of ZEEL, and there is no comingling of departments or employees; ZEEL does not control them, nor do they conduct ZEEL's business. (*Id.* at ¶¶ 4-5.) The only other New York-based contractual relationships described in the Complaint relate to Served Defendants' contractual relationships with consumers in New York for the delivery of goods and services into New York, none of which ZEEL has any control over. (*See* Doc. 1 at ¶ 23.) This is wholly insufficient to establish the ongoing contractual relationship between ZEEL and *any* New York corporation that the first factor requires.

As for *factor two*, having failed to even identify a contractual relationship between ZEEL and any New York corporation, there is nothing that Freeplay can allege to support that such unidentified contract was negotiated or executed in New York by ZEEL, or that ZEEL visited New York to meet with the unidentified counterparties regarding the unidentified contract.

Freeplay's purported identification of a New York choice of law clause that apparently governs Zee TV brand Terms of Use regarding ATUL's consumers' access and use of the website likewise fails to satisfy *factor three*, especially when Freeplay fails to attach or provide it.

---

[8] The Complaint alleges that ATUL-DE, ATUL-WY, Eevee (defined by Freeplay as the "ZEE US Subsidiaries") are wholly-owned subsidiaries of ZEEL and that the "ZEE US Subsidiaries" conduct the business of ZEEL in the United States, as "departments of ZEE, sometimes operating out of the same corporate suite, and ZEE's control is pervasive enough that corporate separation is more formal than real." (Doc. 1 at ¶ 22.)

(Doc. 1 at ¶ 22.)  That certain far-removed subsidiaries of ZEEL have contractual relationships with DISH, Sling TV and YuppTV, who in turn apparently have ambiguously-stated contractual relationships with consumers throughout the United States (incidentally including New Yorkers) does not support the existence of a New York choice-of-law clause in a contract *between ZEEL and any New York entity*.  Again, that is because no such contracts exist.

Finally, Freeplay has alleged nothing to support ***factor four***.  A non-existent contract cannot have specific terms, and as such, there cannot be any allegations to support sending of notices or payments into New York by ZEEL.  In fact, rather than alleging supervision by a New York corporation, as discussed above with factor one, Freeplay's allegations that ZEEL controls ATUL and Eevee are wholly incompatible with any supervision *of ZEEL by a New York corporation*.

* * *

In sum, Freeplay's allegations do not suffice to support that ZEEL has on-going contractual relationships with New York corporations such that ZEEL "transacts business" in New York.

   **b)**  **ZEEL's Websites And Media In India Do Not Give Rise To Personal Jurisdiction.**

Even if ZEEL's websites and media from India may be accessed in New York, that incidental availability falls far short of what is required for ZEEL to have transacted business in New York.  "For a tort claim to arise out of transaction of business in New York, the connection between the transaction and the claim must be direct." *Cox*, *supra*, at *6 (quoting *Mantello*, 947 F. Supp. at 100).  In *Cox*, the Court ultimately held that the defendant's alleged broadcast of sound compositions over its stations' websites was too attenuated from Freeplay's copyright infringement claims to qualify for jurisdiction under § 302(a)(1):

> Although there may be interactive elements to the websites, the simulcasts of the radio broadcasts are as passive an enterprise as are the radio broadcasts themselves. Freeplay also fails to allege that New York residents ever accessed Beasley websites for the purposes of listening to Beasley radio station simulcasts.  It stretches the

15

meaning of "transacting business" too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred or was actively sought.

*Id*. at *7 (internal citation omitted).  Thus, for electronic media, such as television programs, websites, and other platforms, there must be substantially more than merely passive accessibility to anyone in the world, (including New Yorkers) to fall within the reach of § 302(a)(1) of the New York long-arm statute.

But no such allegation, let alone evidence, is present.  Here, ZEEL has not directed and does not specifically direct its own online content towards New Yorkers.  (Decl. at ¶ 11.)  ZEEL's online content is operated only in India, and its mere accessibility around the world, incidentally including New Yorkers, does not constitute the required "purposeful activity" within the state of New York.  *See, e.g.*, *Starmedia Network, Inc. v. Star Media, Inc.*, 00 Civ. 4647(DLC), 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit.") (citation and quotation indication omitted).  Thus, the alleged infringement could not have arisen from a business transaction by ZEEL in New York.

* * *

Accordingly, the Court cannot exercise jurisdiction over ZEEL under CPLR § 302(a)(1) based on its purposeful business-related activities.  To do so would ignore longstanding precedent and instead set an impermissible standard that that any New Yorker could, simply by using a website that does not purposefully direct its content towards New Yorkers, hail that website's ownership into court in New York.  *E.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 253–55 (2d Cir. 2007) (holding that publication of various allegedly defamatory statements on non-New York

website accessible in New York was not a "transaction of business" under § 302(a)(1)).

> **ii.** **Because ZEEL Did Not Commit Tortious Acts When Physically Present In New York, CPLR § 302(a)(2) Does Not Apply.**

Any acts of alleged infringement by ZEEL did not occur in New York and thus do not give rise to jurisdiction under CPLR § 302(a)(2). Under this subsection, a foreign defendant is subject to specific personal jurisdiction in New York if its "commits a tortious act *within the state*." (emphasis added). New York courts have interpreted the "within the state" limitation to require the defendant's actual physical presence in New York:

> The official Practice Commentary to C.P.L.R. § 302 explains that 'if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, [New York case law] would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff.'

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). In copyright claims, Section 302(a)(2) jurisdiction exists only when the alleged infringement by the foreign defendant occurs in New York. *Mantello*, 947 F. Supp. at 101. In *Bensusan*, the Second Circuit agreed that CPLR § 302(a)(2) did not permit the assertion of specific personal jurisdiction over the Missouri-based website because the allegedly infringing acts—creation of the site and misuse of the New York plaintiff's name and logo via their mere display—were performed by persons physically present in Missouri, not in New York. *Bensusan*, 126 F.3d at 25, 29.

Freeplay's allegations are likewise limited to a mere display, claiming that because the alleged infringing works were broadcasted via electronic media portals such as television, websites, and YouTube, they were *ipso facto* made available in New York such that jurisdiction under CPLR § 302(a)(2) is appropriate. While the allegedly infringing content may be accessible anywhere due to the internet, this does not mean that the infringement occurred everywhere. *See Bensusan*, 126 F.3d at 29. *Bensusan* teaches that specific personal jurisdiction in copyright claims

17

typically lies where the website is created. *Id.* ("The acts giving rise to Bensusan's lawsuit—including the authorization and creation of King's web site . . . were performed by persons physically present in Missouri and not in New York.  Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2).").  But ZEEL is not present in New York and has never been physically present in New York. (*See* Decl. at ¶¶ 12-14.)  ZEEL created, maintains, and operates its website from India, and does not exercise control over its subsidiaries' websites or choices of programming to make available and/or broadcast to customers in the United States.  (*Id.* at ¶¶ 12-13.)  As such, ZEEL is not subject to specific personal jurisdiction under § 302(a)(2).

### iii.   ZEEL Did Not Cause Any "Direct Injury" In New York Sufficient To Be Hauled Into New York Under CPLR § 302(a)(3).

To the extent that there is any injury to Freeplay in New York caused by ZEEL, it is merely economic in nature and thus insufficient to confer specific jurisdiction over ZEEL pursuant to CPLR § 302(a)(3).  This subsection permits a court to exercise personal jurisdiction over a foreign defendant who commits a tortious act outside of New York that causes injury to person or property within the state, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in New York and derives substantial revenue from interstate or international commerce.  But neither prong of CPLR § 302(a)(3) supports the assertion of specific personal jurisdiction over ZEEL.

Regarding prong (i), as discussed extensively above in Section II.B.4.i, ZEEL simply lacks any persistent course of conduct in New York, does not do or solicit business in New York (let alone "regularly") and does not directly derive substantial revenues from services rendered in New York.

As to prong (ii), in the copyright context, an analysis under this subsection involves the nature of the injury suffered by the copyright holder in the forum state. *Troma* and *Arbogast*, *supra*, are controlling in this case, and compel the conclusion that the mere losses of licensees and licensing revenue, are insufficient to confer jurisdiction under this subsection.

In *Troma*, the defendants entered into an agreement to broadcast two films in Germany without first acquiring a license from the films' New York copyright holders. 729 F.3d at 216–17. None of the operative events took place in New York, and the Second Circuit concluded that no injury occurred within New York state for purposes of CPLR 302(a)(3)(ii), and therefore it did not support the assertion of personal jurisdiction over those defendants. *Id.* at 217, 220–21. The Second Circuit explained that "[i]t is well-settled that residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction under section 302(a)(3)." *Id.* at 218 (internal quotation and citation omitted). The court continued:

> [W]e have rejected as insufficient to support the exercise of jurisdiction over a defendant allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here. In sum, [t]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes.

*Id.* (second alteration in *Troma*; internal citations and quotations omitted).

Likewise, in *Arbogast,* Freeplay alleged that a car dealership incorporated and based in Ohio committed infringement when it posted to various websites 279 videos incorporating songs or sound recordings copyrighted by Freeplay. 2017 WL 449913, at *1. Assessing "whether the alleged copyright infringement caused an injury in New York" pursuant to CPLR 302(a)(3)(ii), the district court examined the nature of Freeplay's injury and concluded that the only injuries to be gleaned from the complaint were Freeplay's lost licensing revenue (i.e., "economic damages") and the loss of the defendant as a potential licensee. *Id.* at *2–5. Given the nature of those injuries,

the Court concluded that the situs of Freeplay's injury was not New York. *Id*. at *5–7.

The reasoning of *Troma* and *Arbogast* applies in full measure here—where Freeplay contends that ZEEL, a foreign entity, infringes by incorporating copyrighted works into videos merely made available to subscribers through electronic media (such as YouTube and television) to subscribers of other entities. Freeplay's conclusory assertion that Defendants' actions collectively have "materially diminished the demand for [its] works in the television and Internet media industry," (Doc. 1 at ¶ 17), confirm that Freeplay has, at most, merely suffered economic damages that are not a "direct injury" in New York under § 302(a)(3). Nor can Freeplay seriously allege any "direct injury" when the videos allegedly incorporating its works are viewed by others—as it well knows losing the issue of personal jurisdiction in *Arbogast*. In an attempt to avoid *Troma* and *Abrogast*, Freeplay conclusorily claims that it has lost "sales to third parties" and suffered "reduction in value to its catalog." But such conclusory allegations are not only insufficient to establish the requisite "direct injury," they also confirm that Freeplay has, at worst, suffered only economic damages. What Freeplay's allegations boil down to is that it was deprived of license fees from Defendants, including ZEEL. Just like in *Arbogast*, Freeplay's injury is narrowly circumscribed to a single location and is "more akin to traditional commercial tort cases where the situs of injury is the place where the plaintiff lost business." 2017 WL 449913, at *6. And as such, § 302(a)(3) does not provide jurisdiction over ZEEL.

5.    **The Exercise Of Personal Jurisdiction Would Not Comport With Due Process Because ZEEL Does Not Have Sufficient Minimum Contacts With New York.**

Even if, *arguendo*, some type of personal jurisdiction over ZEEL were available in New York—although none is—the exercise of personal jurisdiction would not be consistent with Due Process due to ZEEL's lack of minimum contacts with New York and the unreasonableness of asserting jurisdiction in this case. Even if a court finds jurisdiction (whether under New York

Long-Arm Statute, or under federal law[9]), it may **only** be exercised "if the defendant has certain minimum contacts with the State such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co., v. Washington*, 326 U.S. 310, 315, 66 S.Ct. 154 (1945). "Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Both "minimum contacts" with the forum state and "reasonableness" of asserting jurisdiction in the particular case are required. *See Licci I*, 673 F.3d at 60 (citation omitted).

In assessing whether a defendant has "minimum contacts" with the forum, the plaintiff must demonstrate that "the claim arises out of, or relates to, the defendant's contacts with the forum." *Licci ex rel. Licci v. Lebanese Canadian Bank* ("*Licci II*"), 732 F.3d 161, 170 (2d Cir. 2013). But ZEEL has no contacts with New York sufficient to give rise to any claim, let alone the specific copyright infringement claim Freeplay asserts here. *See supra* Section II.B.4.i.

But even if minimum contacts were somehow satisfied (they are not), jurisdiction must also be reasonable. Courts weigh the following factors in evaluating the "reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

---

[9] Although the Complaint's allegations are specifically targeted to establishing personal jurisdiction over ZEEL under New York's long arm statute and Freeplay has not pled facts supporting federal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), federal jurisdiction is also lacking here. Rule 4(k)(2) only permits a federal district court to exercise personal jurisdiction where three elements are met: (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state, and (3) the exercise of jurisdiction is "consistent with the United States Constitution and Laws." Fed. R. Civ. P. 4(k)(2). ZEEL has no different or greater ties to the United States as a whole than it does to New York. (Decl. at ¶ 16.) Therefore, for the same reasons argued in this section, element (3) cannot be met because federal jurisdiction over ZEEL in this case does not comport with Due Process Clause of the Constitution. Thus, jurisdiction under Fed. R. Civ. P. 4(k)(2) remains unavailable.

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113–14 (1987).

While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the "presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.  In this case, ZEEL's complete lack of direct contacts with New York lead to the conclusion that ZEEL would never reasonably anticipate being hauled into court there.  *See Wide-World Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Furthermore, an assessment of the five *Asahi* factors makes clear that maintaining this action in New York would offend notions of fair play and substantial justice if this Court exercises personal jurisdiction over ZEEL in this case.

First, the burden imposed on ZEEL to litigation in New York is severe, given that it does no business and has no office or employees in the State, as discussed extensively above.  Similarly, as a result of maintaining its operations in India, where the alleged infringement occurred, the witnesses and evidence related to such alleged infringement would all be located there, imposing a severe financial and practical burden on ZEEL's operations should it be forced to defend itself in this action.  (Decl. ¶ 17); *see Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  The burdens that ZEEL would face if forced to litigate this case in New York weigh in favor of declining to exercise personal jurisdiction over ZEEL here.

Second, the State of New York has no real interest in adjudicating this case against ZEEL based upon ZEEL's overseas operations in India and lack of contacts with New York.  If anything, permitting ZEEL to be hauled into court in New York without any real connection to the state could

hinder business between foreign companies and New York companies, contrary to the best economic interests of New York. As such, New York's interests do not weigh in favor of exercising jurisdiction over ZEEL here.

Third, considerations of efficiency further confirm that it would be unreasonable to force ZEEL to litigate this case in New York. While Plaintiff may have an interest in obtaining relief in the state where it has a principal office, the mere convenience to the plaintiff to litigate in its home state cannot tip the balance in its favor. *See Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, 12 CIV. 6390 (JPO), 2013 WL 1775440, at *10 (S.D.N.Y. Apr. 25, 2013). Here, Plaintiff's allegations themselves make clear that ZEEL's purported infringement occurred in India, not New York. Furthermore, as detailed above, the witnesses and evidence related to such alleged infringement would all be located in India, imposing a severe financial and practical burden on ZEEL's operations should it be forced to defend itself in this action. Thus, the interests of efficiency do not support hauling ZEEL into a New York court.

Fourth, the judicial system's interest in efficient resolution of controversies is at worst neutral because the case would involve witnesses located in New York and in India.

Fifth, whatever limited contacts ZEEL may arguably have with the State of New York have nothing to do with this dispute, and are far too attenuated to meet jurisdictional requirements here. Plaintiff can articulate no substantive social policy which would be furthered by this Court's exercise of personal jurisdiction over ZEEL.

In this case, the totality of factors confirm that exercising personal jurisdiction over ZEEL in New York would not comport with the Due Process Clause of the Constitution. In sum, given the complete absence of any meaningful contacts between the ZEEL and the State of New York, due process dictates that ZEEL be dismissed from this action based on the Court's lack of personal

jurisdiction over it.

## III.    CONCLUSION

For the foregoing reasons, Defendant Zee Entertainment Enterprises Limited respectfully requests that the Court dismiss Freeplay's complaint.

Dated: November 30, 2018                      Respectfully submitted,

*/s/ Daniel M. Meier*                            
DANIEL M. MEIER (DM-0328)
**BENESCH, FRIEDLANDER, COPLAN &
    ARONOFF LLP**
39 Broadway, 25th Floor
New York, NY 10006-3039
Telephone: 646.798.8901
Facsimile: 646.798.8902
Email:  dmeier@beneschlaw.com

Kal K. Shah (*pro hac vice*)
Manish K. Mehta (*pro hac vice*)
**BENESCH, FRIEDLANDER, COPLAN &
    ARONOFF LLP**
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192
Email: kshah@beneschlaw.com
Email:  mmehta@beneschlaw.com

Mark E. Avsec (to be admitted *pro hac vice*)
Michael S. Weinstein (*pro hac vice*)
**BENESCH, FRIEDLANDER, COPLAN &
    ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: 216.363.6228
Facsimile: 216.363.4588
Email: mavsec@beneschlaw.com
Email:  mweinstein@beneschlaw.com

*Attorney   for   Defendant   Zee   Entertainment
Enterprises Limited*

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2018, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

  /s/ *Daniel M. Meier*
Daniel M. Meier (DM-0328)
*Attorney for Defendant Zee Entertainment Enterprises Limited*